IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Austin Hartel,<br><br>   Plaintiff,<br><br>v.<br><br>The Board of Regents for the University of Oklahoma; André-Denis Wright, in his official capacity as Provost and in his individual capacity; Mary Margaret Holt, in her official capacity as Dean of the College of Fine Arts and in her individual capacity,<br><br>   Defendants. | Case No.: |

## COMPLAINT

Plaintiff Austin Hartel ("Plaintiff"), by and through his undersigned counsel, for his Complaint against The University of Oklahoma ("University"); André-Denis Wright, in his official capacity as Provost of the University of Oklahoma; and Mary Margaret Holt, in her official and personal capacities as Dean of the College of Fine Arts at the University of Oklahoma (collectively, "Defendants"), alleges as follows:

### INTRODUCTION

1. This is an action for unlawful employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and Oklahoma's anti-discrimination statutes.

2. Plaintiff, a long-standing Associate Professor in the School of Dance at the University, has been denied promotion to Full Professor due to discriminatory animus based on his sexual orientation as a straight male and retaliation for his advocacy against sexual harassment within the University's College of Fine Arts.

3. Plaintiff seeks compensatory damages, punitive damages, injunctive relief, and other relief as the Court deems just and proper.

## PARTIES

4. Plaintiff Austin Hartel is a resident of Norman, Oklahoma, and a tenured Associate Professor in the School of Dance at the University.

5. The Regents for the University of Oklahoma is the governing body of a public institution of higher education located in Norman, Oklahoma, and is subject to federal and state anti-discrimination laws, including Title VII and Title IX.

6. André-Denis Wright, sued in his official capacity as Provost of the University of Oklahoma, is responsible for oversight of faculty promotion decisions and ensuring compliance with University policies and anti-discrimination laws.

7. Mary Margaret Holt, sued in both her official and personal capacities as Dean of the College of Fine Arts at the University of Oklahoma, was previously the Director of the School of Dance and is alleged to have engaged in discriminatory and retaliatory actions against Plaintiff.

8. Each Defendant acted under color of state law and within the scope of their official duties, with certain actions undertaken in their personal capacities as outlined herein.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under federal statutes, including Title VII and Title IX.

10. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367.

11. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this action occurred in Norman, Oklahoma, within the Western District of Oklahoma.

## FACTUAL BACKGROUND

### Plaintiff's Distinguished Career

12. Plaintiff Austin Hartel has been employed by the University of Oklahoma (OU) as a tenured Associate Professor in the School of Dance for over 22 years.

13. Plaintiff has demonstrated exemplary performance in teaching, scholarship, and service throughout his tenure.

14. Plaintiff is a Fulbright Scholar and a nationally and internationally recognized artist.

15. Plaintiff has produced choreography for prestigious organizations, including the National Ballet of Paraguay, Teatro Nuovo di Torino, and Carlos Acosta, Artistic Director of the Royal Birmingham Ballet.

16. Plaintiff's curriculum vitae (CV) includes extensive peer-reviewed work, international acclaim, and leadership within the University's academic community.

17. Plaintiff's qualifications surpass those of a great many Full Professors in the College of Fine Arts.

### Discriminatory Denial of Promotion

18. In 2024, Plaintiff applied for promotion to Full Professor, a position for which he was fully qualified.

19. Plaintiff's promotion was denied based on purported deficiencies in his dossier.

20. The reasons provided for denial included claims of insufficient peer-reviewed work and inadequacies in his creative statement.

21. The stated reasons for denial were demonstrably false and were wholly pretextual.

22. Plaintiff's dossier included more peer-reviewed work than any other faculty member in the School of Dance.

23. Plaintiff's creative statement met all criteria for promotion as outlined by the University's policies.

## Discriminatory Animus Based on Sexual Orientation

24. Plaintiff possesses an audio recording of Defendant Mary Margaret Holt, then Director of the School of Dance and now the Dean of the College of Fine Arts, making derogatory remarks about "straight" male dancers.

25. Defendant Holt stated that "Straight male dancers because they go around and sleep with all the girls in the company are disgusting."

26. Defendant Holt's discriminatory attitude influenced the decision to deny Plaintiff's promotion.

27. Plaintiff is himself a "straight" male dancer and has experienced bias and hostility due to this characteristic.

## Retaliation for Advocacy Against Sexual Harassment

28. Plaintiff advocated for a male student who filed a sexual harassment complaint against a former faculty member in the School of Dance, Derek Minter.

29. Plaintiff's whistle-blowing advocacy included presenting evidence of inappropriate behavior, including late-night lurid and/or sexually suggestive text messages sent by Minter to a number of male dance students.

30. Defendant Holt protected Minter (whom she revered as her favorite protege) despite credible allegations of sexual misconduct.

31. Plaintiff's support for the student who brought the charge against Minter led to Minter's dismissal from his faculty position within the School of Dance. And it ultimately led to retaliation against Plaintiff by Defendant Holt, and by other faculty members.

32. Plaintiff faced unwarranted investigations into his conduct following his advocacy.

33. Plaintiff was excluded from leadership opportunities within the School of Dance as a result of his actions.

## Institutional Retaliation and Hostile Work Environment

34. Plaintiff has been subjected to a pattern of retaliatory actions by Defendants.

35. Plaintiff was denied promotion despite meeting and exceeding the qualifications for Full Professor.

36. Plaintiff was removed from leadership roles within the School of Dance, including his role as the Coordinator of the Modern Dance Program.

37. After many years of glittering annual reviews, after the Minter scandal, Plaintiff's annual faculty evaluations became negative and included discriminatory and ageist remarks.

38. Defendants made comments acknowledging Plaintiff's longevity and tenure *as if these were impediments to his teaching abilities*.

39. Plaintiff was subjected to a series of baseless investigations into alleged conflicts of interest related to his external professional work.

40. Defendants failed to enforce similar restrictions against other faculty members engaged in external work.

41. Plaintiff was denied access to University resources for external projects while other faculty members were granted such access.

42. Defendants violated Plaintiff's Family and Medical Leave Act (FMLA) and Health Insurance Portability and Accountability Act (HIPAA) rights following a car accident in 2023.

43. Defendants disclosed Plaintiff's protected health information without authorization and investigated his medical leave in bad faith.

44. Plaintiff filed complaints with the Title IX office about discriminatory and retaliatory treatment.

45. The Provost's Office discouraged Plaintiff from pursuing Title IX complaints, warning of potential harm to his career.

### Economic and Professional Harm

46. The denial of promotion has caused Plaintiff to earn significantly less than Full Professors in the College of Fine Arts earn.

47. The salary disparity is approximately $75,000 annually.

48. The discriminatory denial of promotion also adversely impacts Plaintiff's retirement benefits, which are calculated as a percentage of his highest salary.

49. The reduction in retirement benefits has long-term adverse financial implications for Plaintiff.

### Unfair Denial of Equal Opportunities

50. Defendants allowed other faculty members to use University resources for external projects.

51. Defendants denied Plaintiff the same access to University resources for external work.

52. Plaintiff faced harassment and retaliation when raising concerns about the unequal application of University policies.

### Administrative Exhaustion

53. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC) alleging discrimination and retaliation based on sex, gender, and protected activities under Title VII of the Civil Rights Act of 1964.

54. The EEOC conducted an investigation into Plaintiff's claims and issued a Notice of Right to Sue on January 17, 2025, indicating that Plaintiff has exhausted all administrative remedies.

### CAUSES OF ACTION

### Count 1. Discrimination in Violation of Title VII of the Civil Rights Act of 1964

55. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

56. Defendants discriminated against Plaintiff based on his sex and sexual orientation, creating a hostile work environment and denying him equal treatment.

57. Plaintiff, as a straight male dancer, was subjected to discriminatory animus, including derogatory remarks by Defendant Mary Margaret Holt, reflecting bias against his gender and sexual orientation.

58. Defendants' denial of Plaintiff's promotion to Full Professor, despite his exceeding the qualifications, was motivated by discriminatory animus.

59. Defendants' actions resulted in economic harm, emotional distress, and reputational damage to Plaintiff.

### Count 2. Retaliation in Violation of Title VII of the Civil Rights Act of 1964

60. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

61. Plaintiff engaged in protected activity by advocating for a student who reported sexual harassment and filing complaints about discriminatory treatment.

62. Defendants retaliated against Plaintiff by initiating unwarranted investigations, denying him promotion, and excluding him from leadership roles.

63. Defendants' retaliatory actions caused Plaintiff economic and professional harm and perpetuated a hostile work environment.

### Count 3. Violation of the Family and Medical Leave Act (FMLA)

64. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

65. Plaintiff exercised his rights under the FMLA following a car accident in 2023

66. Defendants violated Plaintiff's FMLA rights by investigating his medical leave in bad faith and improperly disclosing his protected health information.

67. As a result of Defendants' actions, Plaintiff experienced emotional distress, professional harm, and interference with his rights under the FMLA.

### Count 4. Retaliation in Violation of the First Amendment (42 U.S.C. § 1983)

68. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

69. Plaintiff engaged in constitutionally protected speech by raising concerns about sexual harassment and discrimination within the University.

70. Defendants retaliated against Plaintiff for his protected speech by denying him promotion, subjecting him to baseless investigations, and fostering a hostile work environment.

71. Defendants' actions were under color of state law and violated Plaintiff's First Amendment rights.

### Count 5. Violation of Title IX of the Education Amendments of 1972

72. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

73. Title IX prohibits discrimination on the basis of sex in education programs and activities receiving federal financial assistance.

74. Defendants, as administrators and representatives of the University, violated Title IX by fostering and permitting a culture of discrimination and retaliation against Plaintiff based on his gender.

75. Defendants failed to adequately address complaints of sexual harassment within the University, further perpetuating a discriminatory environment.

76. Defendants retaliated against Plaintiff for supporting a student's Title IX complaint, undermining Plaintiff's professional standing and creating a hostile work environment.

77. Defendants' actions violated Plaintiff's rights under Title IX, causing him significant economic harm, professional damage, and emotional distress.

## Count 6. Invasion of Privacy – Intrusion Upon Seclusion

78. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

79. Defendants engaged in actions that intruded upon Plaintiff's reasonable expectation of privacy, including but not limited to the improper disclosure of Plaintiff's protected health information in violation of Plaintiff's privacy rights.

80. Defendants, through their agents and representatives, knowingly and intentionally disclosed or accessed Plaintiff's private medical information without proper authorization or legitimate purpose.

81. Plaintiff had a reasonable expectation of privacy regarding his medical information, including information related to his Family and Medical Leave Act (FMLA) leave and health status following a car accident.

82. Defendants' actions were highly offensive to a reasonable person and exceeded the bounds of decency expected in an employer-employee relationship.

83. Defendants' conduct caused Plaintiff severe emotional distress, embarrassment, and harm to his professional reputation.

84. As a result of Defendants' invasion of Plaintiff's privacy, Plaintiff has suffered actual damages, including emotional harm, and is entitled to compensatory and punitive damages in an amount to be proven at trial.

## Count 9. Intentional Infliction of Emotional Distress

85. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

86. Defendants engaged in extreme and outrageous conduct by fostering a hostile work environment, retaliating against Plaintiff, and disregarding his rights.

87. Defendants' actions were intentional or reckless and caused Plaintiff severe emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this matter be tried to a jury and further, that the Court grant the following relief:

1. Compensatory damages, including back pay, front pay, emotional distress damages and damages for loss of enjoyment of life, in an amount to be determined by the trier of fact but not less than $1,000,000;

2. Punitive damages for Defendants' willful and reckless conduct, in an amount to be determined by the trier of fact but not less than $1,000,000;

3. Injunctive relief requiring Defendants to remove discriminatory policies and practices;

4. Attorneys' fees, costs, and expenses;

5. Pre- and post-judgment interest;

6. Such other relief as the Court deems just and proper.

Dated: April 9, 2025.

Respectfully submitted,

Richard C. Labarthe, OBA # 11393

Alexey V. Tarasov, OBA # 32926
LABARTHE & TARASOV, a professional association
1000 W. Wilshire Blvd., Suite 355
Nichols Hills, OK 73116
(405) 760-3323; (405) 843-9685 Facsimile
richard@labarthelaw.com
330 W. Gray Street, Suite 208
Norman, OK 73069
(405) 410-5631; (832) 558-3540 Facsimile
alexey@tarasovlaw.com
**Attorneys for Plaintiff**

**JURY TRIAL DEMANDED**
**ATTORNEYS LIEN CLAIMED**